18289

J. N. RAMSEY, Appellant, v. W. E. CAMERON, as Mayor, and H. B. Springs, James E. Tyson, R. M. Grissom and F. C. Hammond, as members of the City Council of Myrtle Beach, Respondents.

(139 S. E. (2d) 765)

*J. J. Able, Jr., Esq.*, of Myrtle Beach, *for Appellant,*

*Joseph E. Singleton, Esq.*, of Myrtle Beach, *for Respondents,*

January 11, 1965.

Moss, Justice.

This action is one under the "Uniform Declaratory Judgments Act", Sections 10-2001 *et seq.*, 1962 Code of Laws. It was instituted by J. N. Ramsey, the appellant herein, a resident freeholder of Myrtle Beach, against the Mayor and the members of the City Council of the City of Myrtle Beach, the respondents herein. The purpose of the action is to adjudicate the validity of certain proceedings instituted to effect

the sale of certain general obligation bonds of the City of Myrtle Beach and to enjoin the issuance of said bonds.

Article II, Section 13, of the 1895 Constitution of this State requires, as a condition precedent to the issuance of general obligation bonds by an incorporated municipality, "a petition from a majority of the freeholders of said city or town as shown by its tax books", seeking an election upon the question. This section makes it mandatory upon the General Assembly to require such a petition and the favorable result of the election ordered thereafter before any incorporated municipality is authorized to issue general obligation bonds. The Constitution sets forth no requirements relative to the content or form of the petition; and these matters are left to the discretion of the General Assembly.

The aforesaid constitutional mandate has been implemented by the "Municipal Bond Act", Sections 47-831 to 47-860, inclusive, 1962 Code of Laws.

Section 47-835 of the Code provides that:

"* * * there shall be filed with the municipal council a petition signed by a majority of the freeholders of such municipality, as shown by its tax books, petitioning the municipal council to hold an election of the sort provided for by the Constitution of the State upon the question of issuing bonds of the municipality. The petition shall set forth the amount of bonds sought to be issued and the purpose or purposes for which the proceeds thereof are to be expended. Each purpose shall be separately enumerated, except that a proposed bond issue for water and sewer purposes may be combined. The filing of such petition shall be a condition precedent to the holding of the election provided for by this article."

The record here shows that, prior to August 12, 1963, a petition signed by a majority of the freeholders of the City of Myrtle Beach was filed with the City Council of said City and such contained the following language:

"I, or we, hereby request the Municipal Council of the City of Myrtle Beach to hold an election for the purpose of

determining whether or not the City of Myrtle Beach shall be empowered to issue general obligation bonds in the amount of $500,000 for the purpose of securing funds with which to acquire a site for and finance the erection of a municipal Civic Center. I understand these bonds will be retired by levying an additional five mill tax on real property in Myrtle Beach.

The "Municipal Bond Act" provides, Section 47-837 thereof, that following the filing of the petition if the municipal council shall find:

"(1) That the petition is signed by a majority of the freeholders of the municipality;

"(2) That it seeks the issuance of bonds for corporate purposes of the municipality; and

"(3) That it seeks the issuance of bonds in an amount not prohibited by any constitutional limitation;

"The municipal council shall order such an election."

The municipal council of the City of Myrtle Beach held a meeting on August 12, 1963, to consider the aforesaid petition. It found that the petition was signed by a majority of the freeholders of the City of Myrtle Beach, as shown by its tax books, and that it sought the issuance of bonds for corporate purposes of the municipality. However, it noted that the 8% Constitutional debt limitation applicable to Myrtle Beach, except as to classes of debt exempted therefrom which do not affect this case, prevented the issuance of general obligation bonds of said City in the amount of $500,000. However, at said meeting the City Council resolved to hold a special election on September 3, 1963, in order to submit to the qualified electors of Myrtle Beach the following question:

"Shall the City Council of the City of Myrtle Beach be empowered to issue, either as a single issue, or from time to time as several separate issues, *not exceeding $500,000 of general obligation bonds of the City of Myrtle Beach, or such portion thereof as shall on the occasion or occasions of*

*their issuance be within the constitutional debt limitation applicable to the City of Myrtle Beach,* and whose proceeds shall be expended for the purpose of securing funds with which to acquire a site and finance the·erection of a Municipal Civic Center?" (Italics added)

The election resulted favorably and City Council now proposes to issue general obligation bonds of the City of Myrtle Beach in an amount less than $500,000 but to the extent permitted by the applicable constitutional debt limitation.

The first question to be determined relates to the right of the city council to order the election upon the basis of the petition above set forth. It is contended that since, on the occasion that it was filed, the sum of $500,000 exceeded the constitutional debt limitation, city council was without power to take any action whatsoever with respect to the petition and should have refused to order the election. Specifically, the appellant contends that since the petition sought the issuance of bonds to an extent greater than that permitted by the constitutional debt limitation, city council had no power to proceed under the "Municipal Bond Act" to order the election and that it had no right to present the question to the electorate in the fashion above set forth.

The question here is quite similar to the situation before this Court in the case of *Watson v. Livingston,* 154 S. C. 257, 151 S. E. 469. In that action, a citizen and taxpayer of School District No. 26 in Orangeburg County sought to enjoin the issuance of certain school bonds of the District. There a petition had been filed by the required number of resident freeholders of the District with the Board of Trustees thereof, asking that an election be held for the purpose of having the electors vote upon the question of issuing and selling bonds of the District to the amount of $175,000. The election was ordered by the trustees and resulted favorably to the issuance of the bonds. However, under the applicable constitutional debt limitation the District could issue only $167,000 of general obligation bonds. The plaintiff, therefore, contended that no bonds could be lawfully issued under

the election. In language pertinent to the instant case, this Court rejected that argument as follows:

"We do not think this contention sound. The position of the respondent, that the trustees of the district may issue any amount of the bonds voted upon up to the constitutional limit, and that the bonds so issued will be valid obligations of the district, seems to us sound upon principle and fully supported by authority."

In *Arthur v. Byrnes,* 224 S. C. 51, 77 S. E. (2d) 311, this Court said:

"* * * The rule has been established in this State that where the total amount of bonds authorized exceeds the constitutional debt limitation, but a portion of same is within such limit, only the excess will be declared invalid. *Watson v. Livingston,* 154 S. C. 257, 151 S. E. 469. In that case the voters of a school district authorized the issuance of bonds in the sum of $175,000. Under the constitutional debt limitation only $167,000 could be issued. It was contended under these circumstances that the entire issue of $175,000 should be declared invalid, but the Court sustained the validity of the bonds to the extent of $167,000 and enjoined the issuance and sale of any bonds in excess of that amount. This principle was also followed in *Ashmore v. Greater Greenville Sewer District,* 211 S. C. 77, 44 S. E. (2d) 88, 173 A. L. R. 397. Also see annotation in 175 A. L. R. beginning on page 852. * * *'"

It is significant that the municipal council is required by the "Municipal Bond Act" to call for an election provided that the petition as specified in the Act has been presented. On the other hand, city council is not required by the "Municipal Bond Act" to issue the bonds even though the election has resulted favorably. The issuance of the bonds following a favorable election is left to the discretion of the municipal council. Also left to the discretion of the city council are many details regarding the provision of the bonds including the amount to be issued.

In like fashion, appellant's contention that the purpose specified in the petition is limited to a Municipal Civic Center costing $500,000.00 has no merit by virtue of the fact that the petition actually seeks the issuance of bonds in any amount up to $500,000. The effect of the petition is to restrict the use of the proceeds of the bonds actually issued for a Municipal Civic Center. The size, capacity and design of such center are left to the discretion of the municipal council, which after a thorough consideration of the facts intends to proceed to issue bonds up to the applicable constitutional debt limitation. The appellant may disagree with the conclusion reached by the council but there is nothing in the Constitution or in the statutes to prohibit their proposed action.

The 1895 Constitution of this State was adopted on December 4, 1895. Thereafter, the General Assembly, by an Act approved March 9, 1896, 22 Stats. 88, implemented Article II, Section 13, of said Constitution, by providing that "it shall be the duty of the municipal authorites * * * to order a special election * * *" upon the petition of the majority of the freeholders of said city or town for the purpose of issuing bonds for any corporate purpose set forth in said petition. The foregoing Act was codified and became a part of Section 7327 of the 1942 Code of Laws. The aforesaid section was specifically repealed by the enactment, on July 31, 1951, of the "Municipal Bond Act". 47 Stats. 771. Section 47-837 of this Act states that "[i]f the municipal council shall find * * * [t]hat [the petition] seeks the issuance of bonds in an amount not prohibited by any constitutional limitation; [it] shall order such an election." A literal interpretation does not help the appellant because the statute can only mean that the municipal council has no discretionary power if it finds that the petition seeks the issuance of bonds in an amount within the applicable constitutional debt limitation. However, the statute is silent as to what course the municipal council should take if the amount sought to be issued is apparently in excess of that permitted by the constitutional debt limitation.

Section 47-837 of the Code was enacted after holding of this Court in the *Watson case,* which established the proposition that where a petition seeks the issuance of bonds in an amount greater than the constitutional limitation, it is presumed that those signing the petition gave authority to issue bonds to the extent of the constitutional debt limitation. Thus, council in this case was justified in assuming that the petition here sought not only the issuance of bonds to the extent of $500,000.00, but sought as well the issuance of bonds in an amount as was permitted by the constitutional debt limitation. The reason for the language of Section 47-837 of the Code is quite apparent. The Legislature did not wish those who would be called upon to vote upon the question to be misled or deceived. If the entire amount of bonds sought to be issued could not be issued, the Legislature wished the voters to be so informed. Council here did just that. Exercising a discretion clearly implied by Section 47-837 of the Code, it interpreted the petition here as this Court had interpreted a comparable petition in the *Watson case* as meaning that it sought the issuance of bonds within the applicable debt limitation; but in order not to mislead or deceive the voters, it submitted the question in such fashion that it was clear that if voted upon favorably the council would issue $500,000 of bonds or such lesser amount as, on the occasion of the issuance thereof, might be within the applicable constitutional debt limitation.

To reach the result contended for by the appellant, we would have to interpret Section 47-837 of the Code as stating that if the council had found that the petition sought the issuance of bonds beyond the applicable debt limitation, it should reject the petition and take no further action thereabout. In the light of this Court's holding in the *Watson case,* such an interpretation is not justified.

The second question to be determined upon this appeal results from the last sentence of the petition which uses the following language, "I understand these bonds will be retired by levying an additional five mill

tax on real property in Myrtle Beach." The court below, noting that the language of the petition requested the issuance of general obligation bonds, ruled that this sentence was not controlling. A general obligation bond is the only type of bond authorized by the "Municipal Bond Act" and the only type of bond which would be marketable. A general obligation bond is payable from an ad valorem tax on all taxable property within the municipality and is to be levied and collected in the manner provided for in Section 47-850 of the Code. In the case of *DeLoach v. Scheper,* 188 S. C. 21, 198 S. E. 409, this Court said: "General obligation bonds mean but one thing. They are bonds payable from an unlimited general *ad valorem* tax on all taxable property."

Since there is no statutory authority authorizing the issuance of any type of tax bond except a general obligation bond, either the petition intended to comply with the provisions of the "Municipal Bond Act" or it was a nullity. It must be assumed that it was intended that the petition comply with the provisions of the Constitution and the "Municipal Bond Act". On this basis we have concluded that the sentence in the petition is merely surplusage, notwithstanding that a different result might obtain had this sentence specifically and definitely imposed a condition precedent to action by the city council of the City of Myrtle Beach.

The exceptions of the appellant are overruled and the judgment below is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS, J., concur.

BUSSEY and BRAILSFORD, JJ., dissent.

BUSSEY, Justice (dissenting).

I most respectfully dissent. In my opinion the case of *Watson v. Livingston,* 154 S. C. 257, 151 S. E. 469, relied upon in the majority opinion, is not at all decisive or controlling here because the constitutional inhibitions and stat-

utory provisions which govern the decision of this case were not involved in the cited case.

Here the legislature had no power to authorize the City of Myrtle Beach to issue bonds, except in compliance with the applicable constitutional provisions, and the City of Myrtle Beach had no power to issue the bonds in the absence of substantial compliance with both the constitutional provisions and the statutory authority granted it by the legislature.

Article VIII, Section 7 of the Constitution provides, *inter alia,* that

"no such debt shall be created without submitting the question as to the creation thereof to the qualified electors of such city or town, as provided in this Constitution for such special elections; * * *."

Article II, Section 13 of the Constitution reads, in part, as follows:

"In authorizing a special election in any incorporated city or town in this State for the purpose of bonding the same, the General Assembly shall prescribe as a condition precedent to the holding of said election a petition from a majority of the freeholders of said city or town as shown by its tax books, * * *."

Pursuant to the mandate set forth in Article II, Section 13, the general assembly enacted, *inter alia,* what is now Section 47-835 of the 1962 Code of Laws. This section provides for a petition in accordance with the constitutional provisions and that,

"The petition shall set forth the amount of bonds sought to be issued and the purpose or purposes for which the proceeds thereof are to be expended * * *. The filing of such petition shall be a condition precedent to the holding of the election *provided for by this article.*" (Emphasis added.)

The foregoing section is a part of Article III, Chapter 9, Title 47 of the Code. The only section of the said Article III which gives any authority to the City of Myrtle Beach to hold the election is Section 47-837. This section provides

that the municipal council shall order such an election if it finds, as prerequisite thereto, three things with respect to the petition of the freeholders, one of which is,

"That it seeks the issuance of bonds in an amount not prohibited by any constitutional limitation; * * *."

Since on the record before us the petition sought issuance of bonds in the exact amount of $500,000, which amount city council found to be prohibited by the constitutional limitation of 8%, I think it clearly follows that city council was then without any authority to order the election. It had no other petition before it and no authority under the Constitution or statutory law to order any such election.

Since I think, for the foregoing reasons, city council had no authority to order the election, the construction of the last sentence of the petition, with reference to retiring the bonds by levying an additional five mill tax on real property, becomes unnecessary.

I wish to point out, however, what I think is a matter of common knowledge. Petitions for signatures of freeholders, such as the one here involved, are usually prepared by someone on behalf of the municipality. I think both the constitutional and statutory provisions contemplate a petition which is at least reasonably free of ambiguity. Whether the signatures of the requisite number of freeholders could possibly have been obtained had the petition here set forth, in unambiguous language, the true facts is a matter of pure speculation and conjecture. For this additional reason, I think the judgment of the lower court should be reversed.

BRAILSFORD, J., concurs.