18396

John W. WATTS and William Helms, Appellants, v. Albert OLI-PHANT, J. E. Bankhead, Willis Crain, Ephraim Jackson, John W. Lyle, Jr., Raymond McDaniel, W. H. McFadden, D. B. Murray, D. C. Reid, Jr., and Ben R. Wall, Jr., together constituting the County Board of Trustees of Chester County, Respondents.

(148 S. E. (2d) 813)

*William R. Hare, Esq.,* of Chester, *for Appellants,*

*Messrs. Sinkler, Gibbs & Simons,* of Charleston, and *Charles W. McTeer* and *Francis G. Holliday, Jr.,* of Chester, *for Respondents,*

August 26, 1965.

LEWIS, Justice.

The question to be decided in this appeal is whether the General Assembly complied with the requirements of Article XVI, Section 1, of the Constitution of South Carolina in proposing and ratifying an amendment to Article X, Section 5, of the Constitution, relating to an increase in the bonded debt limit of the School District of Chester County.

It is proposed to issue general obligation bonds of the School District of Chester County in the amount of $600,-000.00. Article X, Section 5, of the Constitution originally imposed an 8% debt limitation upon the School District, which the proposed bond issue would exceed. However, a constitutional amendment was ratified by the General Assembly in 1951 under which the debt limit of the District was raised from 8% to 12%. It is conceded that the amount of the proposed bond issue would be within the 12% debt limit as established by the 1951 amendment but not within the original 8% limit.

This action challenges the validity of the bond issue upon the ground that the amount thereof exceeds the applicable constitutional debt limitation, in that the General Assembly failed to comply with the requirements of Article XVI, Section 1, of the Constitution in proposing and ratifying the foregoing 1951 amendment. It is, therefore, contended

that the amendment is wholly invalid and ineffective, leaving the District subject to the original 8% debt limit and without authority to issue bonds in the amount proposed.

Section 1 of Article XVI of the Constitution sets forth the only method by which it may be amended, other than by convention. This method consists of three steps, as follows:

(1) Any amendment to the Constitution may be proposed in the Senate or House of Representatives. If the same be agreed to by two-thirds of the members elected to each House, such amendment shall be entered on the Journals respectively, with the yeas and nays taken thereon.

(2) The proposed amendment shall then be submitted to the qualified electors of the State at the next general election thereafter for Representatives; and if a majority of the electors qualified to vote for members of the General Assembly, voting thereon, shall vote in favor of such amendment;

(3) then, to become a part of the Constitution, a majority of each branch of the next General Assembly shall, after such an election, and before another, ratify the amendment by yeas and nays: Provided, that such amendment shall have been read three times, on three several days, in each House.

Plaintiffs contend that the legislative proceedings in both the first and second steps of the foregoing amendatory process were fatally defective in that (1) the proposing resolution was not entered on the Journal of the House with the yeas and nays taken thereon, (2) the Senate failed to take the yeas and nays on the adoption of a House amendment to the resolution, and (3) the amendment was not properly ratified by the General Assembly, after its submission to a vote of the people, because of a defect in the title of the ratifying Act. No question is raised as to the validity of the second step, that is, submission of the question to the qualified electors for approval.

It is well established that compliance with the foregoing provisions for amendment of the Constitution is mandatory, "and a strict observance of every sub-

stantial requirement is essential to the validity of the proposed amendment." *Duncan v. Record Publishing Company,* 145 S. C. 196, 143 S. E. 31. However, in determining whether legislative proceedings comply with the constitutional requirements for amendment, the rules should not be applied so as to bring about the "sacrifice of substance to form." The approach of the courts to such problems was thus stated in *Ex Parte Tipton,* 229 S. C. 471, 93 S. E. (2d) 640: "The Courts are slow to strike down either the legislative proceedings or the election incident to the adoption of a constitutional amendment, and will indulge every reasonable presumption in favor of their validity. As was said in *State ex rel. Corry v. Cooney,* 70 Mont. 355, 225 P. 1007, 1009: 'The question is not whether it is possible to condemn the amendment, but whether it is possible to uphold it, and we shall not condemn it unless in our judgment its nullity is manifest beyond a reasonable doubt'."

With these principles in mind we consider the particular grounds of attack upon the validity of the amendment in question. The facts are not in dispute and our statement of them is drawn largely from the record and the briefs.

It is first contended that the proposing resolution was not properly entered in the Journal of the House with the yeas and nays taken thereon as required by Section I of Article XVI. The following are the facts with reference to this phase of the matter.

The County of Chester and the consolidated School District of Chester County are separate and distinct corporate entities of coextensive areas and were separately subject to an 8% debt limit as provided in Article X, Section 5, of the Constitution. *Tindall v. Byars,* 217 S. C. 1, 59 S. E. (2d) 337. In 1950, evidently feeling that the foregoing debt limit of both the County and the School District should be increased, the then Senator of Chester County introduced in the Senate a proposed amendment to Article X, Section 5, to increase the debt limit of both Chester County and

the School District to 12%. The proposed amendment was duly entered in the Senate Journal in that form, adopted by the required two-thirds vote, and sent to the House, all in compliance with the foregoing requirements of Article XVI, Section 1.

The proposing resolution was given first reading in the House on May 19, 1950. Thereafter, on June 1, 1950, the House amended the title and body of the resolution so that, as amended, it affected only the debt limit of the School District, leaving the 8% limitation on Chester County unaltered.

The first alleged defect occurred in the entry in the House Journal for June 3rd. On that date the resolution was set forth in full in the House Journal. However, it was not printed in the Journal in the form as amended in the House on June 1st (whereby it would increase the debt limit of only the School District), but in the form in which it originally reached the House from the Senate (whereby it would increase the debt limit of both the School District and the County). The Journal shows that the resolution was given second reading on June 3rd with the necessary two-thirds voting in favor of the proposal and having their votes recorded. The foregoing was the only entry in full of the proposing resolution in the House Journal.

The plaintiffs contend that the entry of the resolution in the House Journal in the form in which it came from the Senate, and not in the form in which it was amended in the House, was not a compliance with the constitutional mandate that the proposing resolution be entered in the journal of each branch of the General Assembly. In other words, the plaintiffs say, in effect, that the constitutional requirement for entry of the proposing resolution in the journals means that the resolution must be entered in each of the respective journals in the form in which it was ratified and submitted.

> While Article XVI, Section 1, requires that a resolution proposing an amendment to the Constitution be entered on the Senate and House Journals with

yeas and nays taken thereon, there is no requirement that such entries must be in the form in which the amendment is finally ratified. "The purpose of these provisions of the Constitution relating to amendments [are] that the members of the General Assembly may be fully apprised of the thing sought to be accomplished by the proposed resolution." *Weeks v. Ruff,* 164 S. C. 398, 162 S. E. 450. The legislative proceedings in this case clearly accomplished such purpose.

In so far as it affected the debt limit of the School District, the proposing resolution was not changed from the time of its introduction in the Senate until its final ratification after passing both Houses. Although the entry of June 3rd in the House Journal did not reflect the amendatory action of the House on June 1st (which only eliminated the County from the proposed increased debt limit), it did accurately reflect the provisions of the resolution as it affected the School District which is a separate and distinct corporate entity from that of the County. Therefore, the resolution, *as it affected the debt limit of the School District,* was entered in the House Journal in the form of its final adoption and afforded every notice of the action being taken with reference to the debt limit of the District, which was not affected by the erroneous inclusion of reference to the County, another separate and distinct corporate entity.

The adoption of the resolution by the House was regular in all other respects. While we are not precluded from inquiry into the House and Senate Journals to determine whether the constitutional requirements of Article XVI, Section 1, have been met, the "enrolled act rule," which is applied in this State, does prohibit inquiry into the legislative journals to determine whether the proposing resolution received three readings in each House. *Brailsford v. Walker,* 205 S. C. 228, 31 S. E. (2d) 385. Under this rule, the presumptive regularity of the legislative steps taken in the passage of the proposing resolution requires the conclusion that it received three readings in each branch of the General Assembly, which would include

readings in the House in its amended form. The Members of the House were therefore fully aware that only the amended resolution (applying only to the School District) was before them for consideration at the time the yeas and nays were taken on June 3rd and could not have been misled in casting their votes.

We think that the entry of the proposing resolution, ▮ as made in the House Journal of June 3rd, was in substantial compliance with the requirements of Article XVI, Section 1. This conclusion is supported by the holdings in the cases of *Lucas v. Barringer,* 120 S. C. 68, 112 S. E. 746, and *Stevenson v. Carrison,* 122 S. C. 212, 115 S. E. 251.

The defendant next contends that the Senate failed ▮▮ to comply with Article XVI, Section 1, in adopting the House amendment to the resolution.

As previously pointed out, the resolution, as originally passed by the Senate, provided for an increase in the debt limit of both the County and School District. It was amended in the House so as to eliminate the provisions which would have increased the debt limit of the County, leaving the resolution applicable only to the School District. When the amended resolution was returned to the Senate, the Senate concurred in the House amendments by majority vote without entering the amended resolution in the Senate Journal.

The position of the plaintiffs is that when the House amended the resolution so as to restrict its effect to only the School District and returned it to the Senate, Senate concurrence in the amended resolution required a repetition of the procedure outlined in Article XVI, Section 1, that is, the entry of the amended resolution upon the Journal of the Senate with the yeas and nays taken thereon. The case of *Palmer v. Dunn,* 216 S. C. 558, 59 S. E. (2d) 158, involved a similar situation and requires rejection of the plaintiffs contention.

The amendment by the House merely limited and restricted the scope of the resolution as passed by the Senate by limiting its application to only the School District, instead of to both the County and the District. Since the effect of the House amendment was to restrict the scope of the resolution as passed by the Senate, it was not necessary for the Senate to agree to such amendment by a yea and nay vote. The rule was thus stated in the concurring opinion in *Weeks v. Ruff, supra,* 164 S. C. 398, 162 S. E. 450, and quoted with approval in the *Palmer* case: "[W]hen an amendment by either branch of the assembly to a resolution passed by the other merely limits and restricts the scope of the authority conferred, the change made by such an amendment is not substantial or material in the sense that, when the same is returned to the body in which it originated, it must be agreed to by a yea and nay vote recorded upon the journal."

Conclusive of the issue here is the following from the *Palmer* case:

"Here we have proposal by one legislative branch to amend the constitution by altering the debt limits of three subdivisions of Sumter County and the other body of the General Assembly amended by striking out two of the subdivisions and returned it in that form to the proposing body, the Senate, which concurred in the amendment. That body had already conformed to the constitution with respect to their form of the amendment which included three subdivisions, as to one of which the House of Representatives agreed and followed the constitutional procedure. The greater included the lesser and as to it the respective Houses were in agreement. In that form the proposal to amend was ratified by the General Assembly and adopted by the people in the ensuing general election. Manifestly, there was no necessity to enter the modified form of the proposed amendment in extenso upon the journal of the Senate and again take the yeas and nays. The letter and the spirit of sec. 1 of Art.

XVI were complied with by the procedure which the General Assembly followed."

Finally, the plaintiffs take the position that the amendment was not properly ratified by the General Assembly, after its submission to a vote of the people, because of a defect in the title of the ratifying Act.

The proposed amendment was favorably voted on at the 1950 general election, and a ratifying Act was subsequently passed by the 1951 General Assembly. The Act, however, contained a discrepancy between the title and body thereof. The title described the Act as one to ratify an amendment by which the School District would be permitted to incur bonded indebtedness "to an amount not exceeding 20% of the taxable property in the School District," while the body of the Act provided (conformable with the amendment as submitted and approved at the 1950 general election) for the ratification of an amendment permitting the District to incur bonded indebtedness to an amount not exceeding 12%. The same discrepancy existed between the journal entries of the Senate and House and the body of the bill actually considered. The plaintiffs contend that this discrepancy between the title and the body of the Act invalidated the ratification of the amendment in question.

We do not think that the foregoing discrepancy was so material as to invalidate the amendment.

In the case of *Heinitsh v. Floyd,* 130 S. C. 434, 126 S. E. 336, the court considered a discrepancy between the title and the body of the proposing resolution. There the amendment was sustained and the intent as expressed in the title was permitted to override a contradictory provision in the body because the title clearly represented the purpose sought to be accomplished by the amendment. In so holding the court stated that "the fundamental purpose in construing an amendment is to ascertain and give effect to the intent of its framers and to the people who adopted it; and the court must keep in mind the object sought to be accomplished, and the evils sought to be remedied."

The court also sustained an amendment in the case of *Fleming v. Royall*, 145 S. C. 438, 143 S. E. 162, although the title to the proposing resolution was incomplete. In doing so the general principle was stated that "a broad and liberal construction must be given to constitutional questions that may be raised affecting the passage of acts and joint resolutions, and more especially in reference to the manner in which the title sets forth the purpose and intent of legislative mind; and, whenever the body of the act or joint resolution is germane to the subject expressed in the title, that the courts will uphold its constitutionality."

The subject expressed in both the title and the body of the ratifying Act was the amendment of Article X, Section 5, so as to increase the debt limit of the School District of Chester County. The title clearly set forth the general purpose or subject of the Act and could not have deceived or misled the Members of the General Assembly as to the purpose to be accomplished. The fact that the title indicated an increase of the debt limit of the School District to 20% instead of the lesser figure was not under the circumstances a fatal defect. For as stated by the lower court the defective title of the ratifying Act and the entries in the journals in that form were not misleading except in the sense that the Members of the General Assembly may have thought that they were voting to raise the debt limit of the District to 20% rather than 12%, which could hardly be said, under the facts of this case, to indicate an unwillingness on their part to approve a constitutional amendment to raise the debt limit to the lesser figure of 12%.

It is undisputed that the clear, in fact only, purpose and intent of the proposing resolution, the favorable vote of the people, and the ratifying Act was to raise the debt limit of the School District to 12%. The body of the Act was consistent in every respect with the accomplishment of this purpose. This intent can be effectuated by giving force to the body of the Act without doing violence to any rule of constitutional or statutory construction. In

414

fact, such construction is in accord with the principle recognized in *Doyle v. King,* 211 S. C. 247, 44 S. E. (2d) 608, that "in instances where the Title to the Act is broader than the body, the operation of the Act would be limited to matters embraced both in the Title and in the body of the Act, provided always that the Title is not so deceptive or misleading to render the entire statute void." See also 50 Am. Jur., Statutes, Section 182.

In the instant case the debt limit as expressed in the title of the ratifying Act is broader than the body and, applying the rule recognized in the Doyle case, the Act is limited to the debt limit set forth in the body, that is, 12%. The rule is particularly applicable here because the title was not so deceptive or misleading as to render the entire Act void, and the body clearly sets forth the intent of the framers and the people who adopted the amendment.

The judgment of the lower court is accordingly affirmed.

Affirmed.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.