### 18673

Foy S. McWHIRTER, Appellant, v. W. H. BRIDGES, Chairman, James Bradley, Willis Robinson, R. E. Porter, Thomas Welsh, Harold Crenshaw, Steve Williams, D. W. Wilson and D. Reece Williams, constituting the County Board of Education of Lancaster County, South Carolina, and Daniel R. McLeod, as Attorney General of the State of South Carolina, Respondents.

(155 S. E. (2d) 897)

D. *Glenn Yarborough, Esq.,* of Lancaster, for *Appellant,*

*Messrs. Williams & Parler,* of Lancaster, and *Sinkler, Gibbs & Simons,* of Charleston, *for Respondents,* ▆▆▆▆

July 5, 1967.

PER CURIAM:

This action was instituted by the plaintiff, a resident and taxpayer of the School District of Lancaster County, individually and representing all other persons similarly situated, to enjoin the defendant County Board of Education of Lancaster County from issuing general obligation bonds in excess of the 15 per cent debt limit prescribed by an amendment to Article X, Section 5, of the South Carolina Constitution, ratified by the General Assembly in 1965. The County Board of Education has demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

In 1966 the General Assembly proposed an additional amendment to Article X, Section 5, further raising the debt limit; the same was approved by the people and ratified by the General Assembly in 1967. At issue here is the validity of the Constitutional amendatory process. It is the contention of the defendant County Board that the debt limit has been raised to an amount not to exceed 20 per cent of the assessed value of the School District property. The plaintiff contends that the amendment did not comply with Article XVI, Section 1, of the Constitution.

We are satisfied that the decree of the circuit court correctly sets forth and disposes of all questions raised by the appellant on this appeal and the order of the circuit court shall be reported herewith.

The judgment of the lower court is, accordingly,

Affirmed.

The order of Judge Gregory requested to be reported follows:

This action (one to determine whether the School District of Lancaster County is subject to a limiation as to bonded indebtedness of fifteen (15%) per cent of the assessed value of the taxable property therein by virtue of an Amendment to Article X, Section 5 of the Constitution of South Carolina, ratified in 1965, or whether, on the other hand, the said School District is subject to a limitation of Twenty (20%) per cent of the assessed value of the taxable property therein due to an Amendment of the Constitution ratified in 1967 and valid in part) comes before me on Demurrer of the Defendant County Board of Education of Lancaster County to the Complaint of the Plaintiff.

Article XVI, Section 1, of the Constitution of South Carolina, 1895, provides the only method by which the Constitution may be amended other than by convention. The process consists of three steps, to wit:

first—

Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives. If the same be agreed to by two-thirds of the members elected to each House, such amendment or amendments shall be entered on the Journals respectively, with the yeas and nays taken thereon;

and, then, as step number two—

and the same shall be submitted to the qualified electors of the State, at the next general election thereafter for Representatives; and if a majority of the electors qualified to vote for members of the General Assembly, voting thereon, shall vote in favor of such amendment or amendments;

and, then as step number three—

and a majority of each branch of the next General Assembly shall, after such an election, and before another, ratify the same amendment or amendments, by yeas and nays, the same shall become part of the Constitution: *Pro-*

*vided,* that such amendment or amendments shall have been read three times, on three several days, in each House.

The question to be resolved is whether or not the rule which applies in the case of a constitutional amendment which is invalid in part, can be applied here so as to sustain the remainder of the amendment.

The general law is set forth in 16 Am. Jur. (2d) Constitutional Law, Section 42, to the effect that where a part of an amendment to a State Constitution is invalid because it violates the Federal Constitution, if the several parts of the amendment are severable, the valid portions may be saved, unless it is obvious that the intent of the adopters of the amendment was to accept one general scheme in an entirety; in which event, if part of the amendment falls, the whole must fall with it. *Kruidenier v. Mc-Culloch* (Iowa 1966), 142 N. W. (2d) 355, *Carpenter v. Nebraska* (1966), 179 Neb. 628, 139 N. W. (2d) 541.

The cited authorities relate to situations involving invalidity of amendments to State Constitutions because of conflict with provisions of the Federal Constitution. In the instant case, the claim of invalidity is based on an alleged defect in the amendatory process. The same principles would seem to apply in both cases. The will of the Legislature and of the people in adopting constitutional amendments should be given effect, even though it might not be given effect to the full extent originally intended. This principle also applies in the case of constitutional amendments which are attacked because of some alleged defect in the amendatory procedure. In the case of *Heinitsh v. Floyd* (1925), 130 S. C. 434, 126 S. E. 336, a constitutional amendment was attacked on the grounds that there was an inconsistency between the title and the body of the proposing resolution, and an inconsistency between the title of the proposing resolution and the question as set forth on the ballot presented to the people. In upholding the amendment, the South Carolina Supreme Court stated as follows:

While the Legislature, in proposing a constitutional amendment is in many respects not subject to the rules controlling ordinary legislative action, still, the fundamental purpose in construing an amendment is to ascertain and give effect to the intent of its framers and of the people who adopted it; and the court must keep in mind the object sought to be accomplished and the evils sought to be remedied.

Consequently, there would seem to be no distinction on principle in the case of partial invalidity resulting from conflict with the Federal Constitution and partial invalidity resulting from an alleged defect in the amendatory procedure.

The provisions of the Constitution relating to its amendment are mandatory and must be strictly adhered to; and a strict compliance with every substantial requirement relating to the amendatory procedure is essential to the validity of any proposed amendment. *Duncan v. Record Publishing Company,* 145 S. C. 196, 143 S. E. 31. Thus, no part of an amendment can be sustained unless the requirements of Article XVI of the South Carolina Constitution relating to its amendment have been fulfilled as to that part.

The proposed amendment was voted on favorably by the House by ayes and nays. In the form in which it was voted on in the House, it undertook to raise the debt limit of the School District of Lancaster County to 20% of the assessed value of all taxable property therein. It then went to the Senate where it was amended from 20% to 25% and was voted on in the Senate by ayes and nays in that form. It was then returned to the House where, by voice vote, the House concurred in the Senate amendment. The Defendants contend that two-thirds of the members elected to each House agreed to the proposed amendment to the extent of 20%. They argue that the greater figure, to wit: 25%, of necessity includes the lesser figure of 20%; and that the Senate action in approving the 25% figure necessarily included the 20% figure.

If the procedure followed in proposing this amendment had taken a slightly different form, there could be no question but that it was valid to the extent of 20%. For instance, suppose that the Senate had originated the proposal at 25% and had passed on it by ayes and nays, and then sent it to the House, which amended it downward to 20% and so voted on it favorably by ayes and nays, and then returned to the Senate for concurrence, by voice vote. In that case the 20% amendment would have been properly proposed. *Palmer v. Dunn,* 216 S. C. 558, 59 S. E. (2d) 158. Under such circumstances, the action of the House and Senate, respectively, would have been substantially the same as that taken in the instant case, to wit: the House would have favorably voted by ayes and nays on the 20% debt limit and the Senate would have favorably voted by ayes and nays on a 25% debt limit. The only distinction in the instant case is that instead of originating in the Senate, the proposing resolution originated in the House at a lower figure which was increased in the Senate. I do not think that the order in which the respective Houses considered the proposition takes away from the fact that the essential requirements of Article XVI, Section I, have been met, to wit: that the proposed amendment to the extent of 20% was "agreed to by two-thirds of the members elected to each House * * *". The recent Supreme Court decision in the case of *Watts v. Oliphant,* 246 S. C. 402, 143 S. E. (2d) 813, is authority to support this conclusion.

The ratifying Act by which the amendment under attack in the Watts decision was ratified by the 1951 General Assembly was attacked on the grounds that the title of the Act prescribed a 20% debt limit, while the body of the Act provided for a 12% debt limit. The Court, however, held that this discrepancy was not material so as to invalidate the amendment, stating as follows:

Members of the General Assembly may have thought that they were voting to raise the debt limit of the District to 20% rather than 12%, which could hardly be said under

the facts of this case, to indicate an unwillingness on their part to approve a constitutional amendment to raise the debt limit to the lesser figure of 12%.

Applying this same principle in the instant case, two-thirds of the members of the Senate and of the House, respectively, agreed to the constitutional amendment insofar as it undertook to raise the debt limit of the School District of Lancaster County to an amount not to exceed 20% of the assessed value of all taxable property therein. As stated in *Palmer v. Dunn,* "[t]he greater included the lesser and as to it the respective Houses were in agreement."

The next requirement prescribed by the Constitution is the submission of the proposed amendment to the qualified electors of the State. The question voted on related to increasing the debt limit of the School District in an amount not to exceed 25% of the assessed value of all taxable property therein. In the recent case of *Ramsey v. Cameron,* 245 S. C. 189, 139 S. E. (2d) 765, the City Council of Myrtle Beach was presented with a Petition pursuant to the requirements of the Municipal Bond Act requesting an election on whether or not the City of Myrtle Beach should be empowered to issue General Obligation Bonds "in the amount of $500,000.00" Under the applicable constitutional debt limitation, the City could not issue bonds to that amount and the question arose as to whether or not the City could proceed to hold an election and, upon its favorable result, issue bonds in a lesser amount but within the applicable constitutional debt limitation. The Supreme Court, citing a number of previous decisions, upheld the right of the City to issue bonds in any amount up to $500,000.00, stating that the Petition "actually seeks the issuance of bonds in any amount up to $500,000.00." In the instant case, however, the proposition submitted was to increase the debt limit of the School District to an amount not exceeding 25% of the assessed value of all taxable property therein. Thus, by the express language, to wit: "not ex-

ceeding 25%" any lesser amount, including 20%, is of necessity included.

The 1967 General Assembly undertook to ratify the constitutional amendment. The amendment as ratified provided for an increase of the debt limit of the School District to an amount not exceeding 25%. Under the principle set forth above and the authorities cited, the greater figure includes the lesser and the General Assembly validly ratified the proposed amendments to the extent of the 20% debt limitation. *Palmer v. Dunn, supra; Watts v. Oliphant, supra.*

Having concluded that the constitutional requirements adopting an amendment increasing the debt limit up to 20% have been met, we must then determine whether or not the validly adopted portion of the amendment, can be separated from the rest of the amendment. The South Carolina Supreme Court in the case of *Miller v. Farr* (1963), 243 S. C. 342, 133 S. E. (2d) 838, held that the question of intent with regard to statutes and with regard to constitutional amendments is basically the same. The *Miller case* concerned the interpretation of an amendment to the Constitution and the Court stated as follows:

The question for decision here is basically a question of legislative intent. Constitutional amendments originate in the form of resolutions of the General Assembly, which proposes specific changes in the Constitution. They are sponsored by members of the General Assembly and become effective through legislative processes. Hence, when construing constitutional amendments, the Court applies rules similar to those relating to the construction of statutes, in its effort to determine the intent of the framers and of the people who adopted it. * * *

Article X, Section 5 of the South Carolina Constitution has been amended on numerous occasions so as to increase debt limits applicable to various political subdivisions of the

State; and that was obviously the intent here. *Knight v. Allen* (1959), 234 S. C. 559, 109 S. E. (2d) 585.

The question here is whether or not the General Assembly and the people, while favoring increasing the debt limit of the School District to an amount not exceeding 25% of the assessed value of all taxable property therein, would not have favored increasing the debt limit of the School District to an amount not exceeding 20% of the assessed value of all taxable property therein. The authorities already cited would seem to be conclusive on this point, *Palmer v. Dunn, supra; Ramsey v. Cameron, supra; Watts v. Oliphant, supra;* and I am satisfied that it was the intent of the General Assembly and of the electors to amend the constitution so as to increase the debt limit applicable to the School District up to the amount of 25% of the assessed value of all taxable property therein, or of any lesser amount in excess of the 15% debt limitation otherwise applicable. There is no basis on which to hold that the intention was that the debt limit be amended to an amount not exceeding 25%, but not to any lesser figure.

In reaching this conclusion, I am mindful of the recent decision of the South Carolina Supreme Court in the case of *Gebhardt v. McGinty,* 243 S. C. 495, 134 S. E. (2d) 749, in which the Supreme Court ruled invalid a proposed amendment to the South Carolina Constitution which did not meet the requirements as to form insofar as they related to the ratifying amendment. In the *Gebhardt case,* the proposed amendment was voted on favorably by the proposing General Assembly, received a favorable vote in the election, and was ratified by the succeeding General Assembly. However, the form of the ratifying legislation did not include the language of the amendment as required by Article XVI, Section 1, and for that reason the Supreme Court struck down the amendment. The basis of the Supreme Court's holding was that the express requirements of Article XVI, which had been adhered to consistently by the General Assembly, were not followed in the case there under consid-

eration. On the other hand, in the instant case all of the requirements of Article XVI of the South Carolina Constitution have been met insofar as the 20% debt limitation is concerned. It was agreed to by two-thirds of the members of each House of the General Assembly, favorably voted on by the people and subsequently ratified.

Now, therefore, on motion of Messrs. Williams and Parler, attorneys for the Defendant County Board of Education of Lancaster County, it is

Ordered, adjudged and decreed that the Demurrer of the Defendant County Board of Education of Lancaster County be, and the same hereby is, sustained and the right of this Defendant to proceed to issue General Obligation Bonds of the School District in an amount not in excess of 20% of the assessed value of all taxable property therein is hereby confirmed.

It is so ordered, adjudged and decreed.