## 20473

Toy A. HYDER, Jr., Petitioner, v. Governor James B. EDWARDS, State Treasurer Grady Patterson, Jr., Comptroller General Earle E. Morris, Jr., Chairman of the Senate Finance Committee Rembert C. Dennis, Chairman of House Ways and Means Committee Tom G. Mangum and Attorney General Daniel R. McLeod, Respondents.

(236 S. E. (2d) 561)

*Robert A. Hammett* and *Richard H. Rhodes, of Burts, Turner, Hammett and Harrison,* Spartanburg, *for Petitioner,*

*William M. Youngblood, Jr., of Sinkler Gibbs and Simons,* Charleston, and *James P. Fields,* of Cheraw, *for Respondents,*

July 21, 1977.

NESS, Justice:

This is a declaratory judgment action instituted in the original jurisdiction of this Court to determine the constitutionality of a resolution by the State Budget and Control Board dated April 20, 1977, authorizing the issuance of state capital improvement bonds.

An amendment of Article X of our State Constitution was proposed under the terms of Joint Resolution 750 of 1976. Pursuant to our constitutional amendatory process, the issue was submitted to the qualified electors in the general election of 1976 and a favorable vote was received. On May 4, 1977, the General Assembly ratified the amendment to Article X

providing that the amendment should "become effective and shall be in force and effect from and after the 30th day of November, 1977." Act R-126 of the Acts of the General Assembly for 1977. A stay of the issuance of the improvement bonds by the State Budget and Control Board was ordered pending a hearing on the merits by this Court.

The sole issue presented is the propriety of the postponement of the operative date of the amendment. The amendment to Article X dictates significant changes in the uniform assessment of taxable property, property tax exemptions, bonded indebtedness, and the field of public finance generally. The resolution of the State Budget and Control Board proposes to pay the principal and interest on the capital improvement bonds by pledging the full faith, credit and taxing power of the State allegedly in contravention of Amended Article X. There is no contention that the resolution would be constitutionally suspect before the amendment.

Hence, a determination of the effective date of the amendment to Article X will be dispositive of all the issues presented.

Our constitutional amendatory process is delineated in Article XVI, Section 1 of the South Carolina Constitution:

"*Amendments.*—Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives; *provided,* however, that for the general elections in 1970, 1972, 1974 and 1976 revision of an entire article or the addition of a new article may be proposed as a single amendment with only one question being required to be submitted to the electors. Such amendment may delete, revise and transpose provisions from other articles of the Constitution provided such provisions are germane to the subject matter of the article being revised or being proposed. If the same be agreed to by two thirds of the members elected to each House, such amendment or amendments shall be entered on the Journals respectively, with the yeas and nays taken thereon; and the same shall be submitted to the quali-

fied electors of the State, at the next general election there-after for Representatives; and if a majority of the electors qualified to vote for members of the General Assembly, vot-ing thereon, shall vote in favor of such amendment or amend-ments, and a majority of each branch of the next General Assembly shall, after such election, and before another, ratify the same amendment or amendments, by yeas and nays, the same shall become part of the Constitution: *Provided,* that such amendment or amendments shall have been read three times, on three several days, in each House. *Provided,* that a proposed amendment providing for a change in the bonded debt limitation of a county or any of its political subdivisions shall be voted on only by the qualified electors of such coun-ty." 1976 S. C. Code of Laws.

South Carolina is thus unique in its three tiered procedure for amendment of our Constitution. First, the proposed amendment must be agreed to by two-thirds of the members of each House in the General Assembly. Second, the propos-ed amendment must be submitted and favorably approved by a majority of the voters during a general election. Finally, a majority of the next General Assembly must ratify the amendment.

Unquestionably, the requirements of Article XVI, Section 1, are mandatory and must be strictly com-plied with. *Duncan v. Record Publishing Company,* 145 S. C. 196, 143 S. E. 31 (1927). Procedurally, there is no viable contention that the amendatory process was de-fective or not strictly complied with; the amendment was constitutionally enacted and the only issue is the date of its effect and operation. Our Constitution is silent with respect to the date upon which an amendment must become effective.

There is, however, a constitutional time constraint in the third step of our amendment process. Article XVI, Section 1 provides that "the next General Assembly shall, after such election, and before another, ratify" the amendment. The limitation is tantamount to a two-year period in which the

next legislature must act to ratify an amendment. If the Legislature was in session in November of 1977, they could certainly at that time ratify the amendment. If they desired to wait until January of 1978, when they will be in session, they could ratify the amendment. It necessarily follows that if they could do it then, they could delay the effective date of the ratification until November, 1977.

We have heretofore held that rules relating to constitutional requirements for amendment should not sacrifice substance for form. *Watts v. Oliphant,* 246 S. C. 402, 143 S. E. (2d) 813 (1965).

"The Courts are slow to strike down either the legislative proceedings or the election incident to the adoption of a constitutional amendment, and will indulge every reasonable presumption in favor of their validity. As was said in *State ex rel. Corry v. Cooney,* 70 Mont. 355, 225 P. 1007, 1009 : 'The question is not whether it is possible to condemn the amendment, but whether it is possible to uphold it, and we shall not condemn it unless in our judgment its nullity is manifest beyond a reasonable doubt.' " *Watts v. Oliphant, supra,* 246 S. C. at 407, 143 S. E. (2d) at 815, quoting from *Ex parte Tipton,* 229 S. C. 471, 476, 93 S. E. (2d) 640 (1956).

The same rules of construction should apply to the operative date of the amendment. It was totally within the legislature prerogative to ratify the proposed amendment *at any time* within two years of the 1976 general election. It logically follows that ratification action could have taken place after the declared effective date of November 30, 1977.

There are cogent and logical reasons for the postponement of the operative date of the amendment. New Article X is sweeping and dramatic in its reforms. It is a comprehensive amendment encompassing a broad spectrum of areas relating to the fiscal affairs of our State. Many long range plans structured on prior financial policies will require modification. Public finance is not a matter of impulsiveness as it

requires utmost circumspection and deliberation. Deferment of the operative date of the amendment affords an express notification of forthcoming guidelines and a definite period of transition. The Legislature declared in Section 2 of Act R-126 that "[i]nasmuch as much proposed bonded indebtedness is now planned both by the State itself and many of its agencies, institutions and political subdivisions, it has been decided that the postponement of the effective date of the ratification of this amendment by the provisons of Section 3 hereof is a matter of essential inducement to the action herewith taken by the General Assembly."

We are not presented with an attempted postponement of the effective date of an amendment beyond the two-year period prescribed for ratification. Hence, we intimate no opinion on that separate and distinct issue.

We hold that based on the peculiar facts of this case, the Legislature acted within its discretion by delaying the effective date of the amendment within the two-year period allowed for ratification. The resolution of the State Budget and Control Board is not constitutionally defective as New Article X only becomes operative as of November 30, 1977. It is therefore Ordered that the prayer for relief is denied and the Complaint of the Petitioner is hereby dismissed.

LEWIS, C. J., and LITTLEJOHN, RHODES and GREGORY, JJ., concur.